[Criminal No. 410.    Filed May 19, 1917.]

[165 Pac. 331.]

## CHARLES F. QUAYLE, Appellant, v. STATE, Respondent.

1. CRIMINAL LAW—APPEAL AND ERROR—PRESUMPTIONS.—Where the record is silent, it will be presumed the trial court properly admonished the jury in a criminal case upon retiring.

2. CRIMINAL LAW—RESERVING GROUNDS FOR REVIEW—NECESSITY OF OBJECTIONS.—In a criminal case, accused cannot complain for the first time upon appeal that the court failed to admonish the jury when it retired.

3. INDICTMENT AND INFORMATION—COMMITMENT—SUFFICIENCY.—Where a defendant was charged with rape, a commitment reciting that he appeared guilty "as charged," and ordering him held to answer "the same," is sufficient basis for an information charging violent rape.

4. CRIMINAL LAW—NEW TRIAL—POSTPONEMENT.—Under Penal Code of 1913, section 1105, subdivision 4, authorizing the court to grant a new trial for material errors, and section 1012, authorizing postponements, the trial court's refusal to grant a postponement may be asserted as ground for new trial.

5. CRIMINAL LAW—POSTPONEMENT—DISCRETION OF COURT.—Postponement of a criminal trial rests largely in the trial court's discretion, and his action will not be reversed unless such discretion has been abused to accused's prejudice.

6. CRIMINAL LAW—POSTPONEMENT—DISCRETION OF COURT.—A trial court *held* not to have abused its discretion in refusing to postpone the trial of a rape case because a witness desired by defendant was absent, where such proposed witness' affidavit disclosed that he had no intention of venturing within the court's jurisdiction.

7. RAPE—SUFFICIENCY OF EVIDENCE.—Evidence, consisting largely of prosecutrix's story and physical facts, *held* to sustain a conviction for rape against the defense that the prosecutrix did not forcibly resist.

8. CRIMINAL LAW—NEW TRIAL—NEWLY DISCOVERED EVIDENCE.—There is no abuse of discretion in refusing a new trial motion in a rape case for newly discovered evidence, where one of the proposed witnesses testified fully at the former trial and the other two did not offer to testify in the future, and the evidence if given would be cumulative or impeaching.

9. CRIMINAL LAW—VENUE—SUFFICIENCY OF EVIDENCE.—The venue in a prosecution for rape *held* sufficiently established by indirect evidence.

[As to venue as place where crime is deemed to have been committed, see note in 44 Am. St. Rep. 79.]

APPEAL from a judgment of the Superior Court of the county of Navajo. John A. Ellis, Judge. Affirmed.

Messrs. Jones & Jones and Mr. Louis Kleindients, for Appellant.

Mr. Wiley E. Jones, Attorney General, and Mr. R. W. Kramer and Mr. Geo. W. Harben, Assistant Attorneys General, for the State.

CUNNINGHAM, J.—The appellant was charged with the commission of the crime of rape, on September 12, 1915, by a sworn complaint filed with a justice of the peace on the fourteenth day of September, 1915. On September 27, 1915, the defendant appeared for the preliminary examination of the charge. Having examined the witnesses produced by the parties, the magistrate entered the following order, to wit:

"After listening to the evidence adduced, it appearing to the court that there is sufficient evidence to believe the defendant guilty as charged, I hereby order that he be held to answer the same and that his bond be fixed at $3,000."

On October 7, 1915, the county attorney of Navajo county filed an information in the superior court charging the defendant with the commission of the crime of violent rape on Eva Dick, on or about the twelfth day of September, 1915. The defendant, having been formally arraigned on the charge, entered his plea of not guilty.

On February 29, 1916, the defendant presented his motion to withdraw his plea of not guilty for the purpose of presenting a motion to set aside the information upon the grounds "that before the filing of said information he had not been legally committed by a magistrate for the crime of rape, or for any other crime." The motion was denied. The appellant urges as error the order of the court refusing to permit him to withdraw his said plea for said purpose.

The defendant thereupon moved for a postponement of the trial until the next jury term of the court, upon the ground and for the reason of the absence of a witness, Len Taylor. The motion is accompanied by an affidavit of the defendant setting forth that this party is a resident of the town of Winslow, and has been for many years last past; that a subpoena was issued for him on February 24th and placed in

the hands of the sheriff of the county for service. The facts
he expects to be able to prove by this witness are thereupon
set forth in detail. He continues:

"That he [defendant] cannot prove said facts by any other
witness. That he can procure the attendance of said witness,
Len Taylor, at the next jury session of this court. That said
testimony is material to defendant's defense. That the said
witness is not absent by the consent or procurement of the
defendant."

The county attorney in behalf of the state opposed the
granting of the postponement of the trial on account of the
absence of the witness Len Taylor, and in support of his
opposition to such postponement filed an affidavit setting
forth the diligence used by the county attorney to locate the
said absent witness. A number of subpoenas were caused
to be issued and placed in the hands of the sheriff of Navajo
county and in the hands of the sheriffs of other counties of
the state, and all of which have been returned not served be-
cause the witness could not be found. The county attorney
in his affidavit denies that the witness would testify as con-
tended by the defendant, and sets forth the substance of the
facts the state alleges it can prove by the said witness in
support of the charge, and alleges that the witness is not
absent by the consent or procurement of the prosecution.
Upon due consideration, the court denied the defendant's
motion for a postponement of the trial. Such order is urged
on this appeal as error.

The appellant in his brief complains that the court failed
to admonish the jury as required by law upon a number of
occasions when the jury retired from the court in charge of
the bailiffs. The minutes of the court are silent upon this
matter, but the question is raised for the first time on this
appeal. This court must presume, the record being silent,
that the trial court performed its duty, and will not inquire
for the first time on appeal whether that duty has been
violated; the record being silent with regard to the matter.
The defendant was present at the trial and may have ob-
jected, and should have objected to any failure of the trial
court to follow the prescribed procedure. We presume if
defendant deemed his rights jeopardized by the alleged omis-
sion he would have timely objected, and if he saw and did
not object, or failed to see any irregularity in the matter, he

waived it, and cannot be heard to complain for the first time on appeal.

The appellant depends upon *Fertig* v. *State,* 14 Ariz. 540, 133 Pac. 99, as supporting his proposed motion to set aside the information. In that case we had before us for consideration the sufficiency of a commitment to justify the county attorney filing an information based thereon. The commitment in question ordered the defendant held to answer a charge of "felony," and the information filed charged the commission by the defendant of rape. There we said:

"The order of commitment may be for an entirely different offense from that charged in the complaint. The magistrate may hold defendant for 'any public offense' of which he has no jurisdiction to try and determine."

The commitment having recited that the defendant was held to answer the crime of felony, which was made to appear to the magistrate from the evidence adduced had been committed. The crime to answer which the accused is held must be determinable from the order committing the accused to answer. If, by an examination of the magistrate's order committing the accused to answer, the prosecuting attorney is able to definitely determine and exactly know the particular crime the accused has been held to answer, then it is the plain, simple duty of the prosecutor to prepare the information charging the accused with the commission of the offense for which the accused has been held to answer. In this case the magistrate examined the accused on a charge of rape, and from the evidence he became satisfied that the defendant is guilty "as charged" and held him to answer the "same." Could the prosecuting officer be mistaken as to what crime the magistrate believed had been committed for the commission of which the accused was held to answer? I think not. The crime for the commission of which the accused was held to answer was that charged in the complaint, and no other. Had the order of commitment declared that the magistrate believed from the evidence produced that a felony had been committed and thereupon ordered the accused held to answer the same, we would have then a parallel case with the Fertig case. The prosecuting attorney must be credited with having some degree of understanding, and so credited when he took up the order of commitment and found that this accused was held to answer a charge proven to the satisfaction of the

magistrate. He could not be mistaken as to the nature of the charge proven, because a casual reference to the complaint by which the charge is set forth, and which was the matter examined into, reveals certainly, definitely, and exactly that the charge was one of rape alleged to have been committed by the accused upon Eva Dick. Had the prosecuting attorney, by the information filed, charged the defendant with the commission of a felony other than violent rape, the information would have been subject to dismissal under the principle laid down in the Fertig case.

The court correctly refused to permit the defendant to withdraw his plea of not guilty for the purpose of moving to set aside the information for the reasons and on the grounds urged.

The refusal of the trial court to grant the defendant's application to postpone the trial of the cause until the next jury term of the court, because of the absence of Len Taylor, a witness, was asserted as a ground for a new trial, and properly so, under subdivision 4 of section 1105 of the Penal Code of Arizona of 1913, to wit:

"When a verdict has been rendered against the defendant the court shall, upon his application, grant a new trial, in the following cases: . . . (4) When the court has committed any material error, calculated or tending to injure the rights of the defendant."

"When an action is called for trial, or at any time previous thereto, the court may, upon sufficient cause, direct the trial to be postponed to another day." Section 1012, Penal Code 1913.

The cause shown by the affidavit of the defendant for a postponement of the trial consisted of the showing that the defendant expected to prove by Len Taylor, the absent witness, the following circumstances, briefly stated, to wit: He expected Len Taylor to testify that defendant was introduced to Eva Dick as Charles Quayle, his true name; that Eva Dick, and two other persons, rode with the defendant in defendant's one-seated Ford automobile immediately following the first meeting and the introduction of the defendant to Eva Dick; that thereafter other rides with the like number of persons were had in the same automobile, and on each said occasion the time was at night after 8 o'clock, and on each of said occasions and rides the defendant drove the machine;

that Eva Dick sat next to defendant, and another woman sat next to Eva Dick, and Len Taylor stood behind the seat; that on each of said occasions Eva Dick kissed and caressed the defendant a number of times while riding; that on the night of the 11th of September, 1915, the defendant, Eva Dick, Miss Shank, and Len Taylor started for a ride in the same machine, occupying about the same relative positions in the machine as above described; that after riding a little while some member of the party suggested going to a dance; this suggestion was acceptable, and they proceeded to the dance, and the party danced for a short time; that Eva Dick wore white stockings on that night at the dance. This is the substance of the testimony the defendant expected to prove by Len Taylor. He alleges that Len Taylor is a material witness, and that he is unable to prove the foregoing matters by any other witness, and that defendant will be able to have Len Taylor present at the next jury term of the court.

The court determined the issues raised by the motion and opposition thereto against the defendant's contention. The granting of a postponement of the trial is a matter within the sound legal discretion of the trial court, and, when the action of the court is brought into question on appeal, the ruling made will not be disturbed by an appellate court unless it is made to appear that such discretion has been abused, to the defendant's prejudice. The trial court reviewed its order refusing to postpone the trial of the cause, passing on the twelfth paragraph of defendant's motion for a new trial, and reaffirmed the former ruling made, "both upon the showing made at the time of the motion for the continuance, and the showing made at this time"—the time of ruling on the motion for a new trial.

In support of the motion for a new trial upon the ground of error in refusing a postponement of the trial, the defendant reasserted the materiality of Len Taylor's testimony, and excused his absence from the trial, as a further reason why the trial should have been postponed, that witness Len Taylor was absent because of threats made against him by Eva Dick at a conversation had on September 13, 1915, which fact was unknown to defendant until after the trial was finished. The affidavit of Len Taylor is presented in support of the motion, and bears date of April 1, 1916. The verdict was returned and recorded March 3, 1916. The motion for a new trial was

filed April 3, 1916, and on the same day was denied. In his
affidavit made before a notary public at Winslow, Navajo
county, on said first day of April, Len Taylor states that he
absented himself from the jurisdiction of the court for the
reason of a conversation had with Eva Dick in the city of
Winslow on the thirteenth day of September, 1916.

" . . . And as a result of said conversation affiant left his
home and the process of this court for the reason that affiant
was threatened by the said Eva Dick during this last-
mentioned conversation, and in order to protect himself from,
and in order not to have himself implicated, as a defendant,
in any wrongful criminal prosecution, he left the jurisdiction
of this court in order that he could not be subpoenaed as a
witness on behalf of the defendant in the above-entitled
cause."

From this fact alone the court would have permitted the
court's process abused by granting a postponement, and the
fact is evident that the witness would have been absent at the
next jury term of the court, and all future terms of the court
until this cause was disposed of. He shows most clearly and
unequivocally that his purpose was, and still is, to avoid the
process of the court to the end that he will not be required to
give testimony on the trial of this charge. Neither the state
nor the accused can have the benefit of his testimony in this
case at any time, is the matter made definite by this portion
of his affidavit. The matter of the correctness of the order
refusing to postpone the trial is cleared of all doubt by Len
Taylor's purported affidavit in support of the motion for a
new trial urged on that ground.

The appellant contends that the evidence fails to sustain
the conviction in the particular that the evidence fails to
show resistance on the part of the prosecutrix which was over-
come by the accused. The appellant does not contend that
all evidence of resistance is wanting in the record, but seems
to contend that the evidence is insufficient in this class of
criminal cases to justify a conviction. He refers to *Sowers
v. Territory*, 6 Okl. 436, 50 Pac. 257, as a portion of his
argument.

The authorities treating criminal law subjects have for a
long period of time treated rape as exceptional in the par-
ticulars of an examination into the sufficiency of the evidence
to support a conviction, and in matters of procedure differing

from the rules of procedure in ordinary criminal cases. As said in *Sowers* v. *Territory, supra:*

"Sir Matthew Hale, in 1 Pleas of the Crown (Ed. 1778), p. 363, distinguishes this character of case and the procedure from other criminal cases, and lays down certain rules and admonitory advice that have been approved by the courts of every jurisdiction since that day. He says: 'It is true that rape is a most detestable crime, and therefore severely to be punished, with death; but it must be remembered that it is an accusation easily to be made, and hard to be proved, and harder to be defended by the party accused, though never so innocent.' "

He mentions some instances, and comments on them, and continues:

"I only mention these instances that we may be more cautious upon trials of offenses of this nature, wherein the court and jury may with so much ease be imposed upon without great care and vigilance, the heinousness of the offense many times transporting the judge and the jury with so much indignation that they are hastily carried to the conviction of the person accused thereof, by the confident testimony, sometimes of malicious and false witnesses."

The information charges rape as defined by section 231, subdivision 3, of the Penal Code of 1913, as follows:

"Rape is an act of sexual intercourse accomplished with a female, not the wife of the perpetrator, under either of the following circumstances: . . . (3) Where she resists, but her resistance is overcome by force or violence."

Section 233 of the Penal Code of 1913, provides that:

"The essential guilt of rape consists in the outrage to the person and feelings of the female. Any sexual penetration however slight, is sufficient to complete the .crime."

The accused testified on the trial in his own .behalf, and from his testimony and from all of the testimony in the case, the only circumstance urged as tending to contradict the claim made by the prosecutrix that she resisted the accused's assault, and that her resistance was maintained until overcome by force, is the circumstance that the prosecutrix persisted in her wish that the accused would marry her after the crime was committed and until she was informed that the accused was already married. The accused insisted on the trial, and yet insists on this appeal, that this prosecution is

prompted by a motive for revenge for the broken promise of marriage and his inability to keep such promise because of his having a wife and family of two small children, of which prosecutrix was not informed by him when she agreed to marry him.

The record contains no evidence of physical facts corroborating the story of the accused bearing on the matters of the alleged consent and nonresistance, but the story told by the prosecutrix of the force used by the accused to overcome, and which did overcome her resistance, is corroborated by the physical facts in evidence, and if such facts are true, and the jury's verdict brands them true, they are silent witnesses, which testify in such terms as may carry belief to a moral certainty and to the exclusion of any hypothesis other than the guilt of the accused. The very fact appearing that this girl was found trying to hide her shame, trying to get away from the publicity brought about by the prosecution of the accused on this charge, would not be proof or evidence tending to disprove her story of the outrage. While the evidence discloses that the prosecutrix said and did inconsistent things after the occurrence was past, she at no time told any person a different story of the manner and means used by the accused in accomplishing the outrage—from the story she told in the beginning of the prosecution and on the stand while testifying as a witness. The jury saw all of the witnesses, heard them testify, and had the opportunity to observe their manner while testifying and to observe many things which were or may have been convincing to a juror, but impossible of recording for the consideration of an appellate court. In the absence from the record of many of the things which a juror would have the opportunity to observe during the course of the trial, the testimony is yet convincing that the jury had ample evidence upon which to base a verdict of guilty.

The character of the evidence is such that a due regard for decency justifies us in omitting a review in detail from this opinion. Suffice it to say that the evidence amply sustains the verdict rendered.

The appellant moved for a new trial, alleging as grounds therefor, among others, not heretofore discussed, that new evidence was discovered material to the defense, and because the witness ''Len Taylor was caused to leave the jurisdiction

of this court by threats of the prosecuting witness.'' In support of the motion for a new trial upon all questions, the appellant produced the affidavits of Len Taylor, Annie Durham, and C. E. Mullins. The affidavit of Len Taylor is not worthy of serious consideration by any court, for the reason the affidavit states that he is a resident of Winslow, Arizona, and absented himself because of fear of a criminal prosecution, and intimates nowhere that he will ever testify with regard to this matter. He does not obligate himself to appear and testify in the case at any time or at all. He sets forth certain matters alleged to be within his knowledge and swears they are true; but all of the matters set forth in his affidavit have been threshed over by other witnesses who testified, and they are not evidence newly discovered. If he should be induced to come forward and testify to the matters and things he says are within his knowledge, the effect of his testimony would be to contradict in some slight particulars the evidence given by some other witness. He mentions that the prosecuting witness stated to him on September 13, 1915, that "'I am going to get Charlie Quayle for trying to have intercourse with me last night.'' This is in effect impeaching the statements of both the accused and prosecutrix.

The affidavit of Annie Durham was presented. She details a statement which she swears was made to her by the prosecutrix at a restaurant, relative to the prosecution of the case, as follows:

"Anna, I was warned I had to do it, because Mr. Jordan told me that it would be perjury if I did not tell the same story I told before the justice of the peace, and he said he would prosecute me even if he did hate to do it. So I had to do what he told me. I know it put Quayle in bad, but I can't help it, because I don't want to get into any more trouble myself.''

This witness testified in the case, referred in a general way to the same matter, stated that she had told the accused and his counsel about the conversation had with the prosecutrix, and certainly, in the circumstances, the statement detailed in the affidavit was made known, and is not evidence newly discovered within the rule authorizing a new trial, nor does it tend to show the former statements made of the matter were untrue.

The affidavit of C. F. Mullins details a statement alleged to have been made by the prosecutrix at San Diego, California, on the twenty-fifth day of March, 1916. The statement is a detail of the things the prosecutrix said she told Len Taylor on the Monday night after the assault. The effect is that she told Len Taylor what Miss O'Hearn had told prosecutrix could be done about a civil action against Quayle, with a request that Len Taylor would keep quiet about the matter. She stated further: That she did not know that Quayle could be imprisoned. That she tried to straighten the matter out several times, but the officers would not allow her to do so. They threatened to put her in jail if she did not prosecute the case. "They promised me new clothes if I would, and after this I thought I had better stick to my first story. If you can get this whole matter fixed up without getting me into trouble, I will do the right thing." Conceding that this impeaching affidavit was sufficient upon which to grant a new trial for any purpose, yet the affiant does not give his place of residence. The affidavit was made in San Diego, in the state of California, where he is presumed to reside. He does not state that he will testify to the facts stated either before the court or otherwise. If testified to, would a jury believe them? If they believed, would they therefrom disbelieve that this defendant ravished the girl in the manner she testified he did? She did not deny the truth of her first story.

The showing made by the affidavits produced is not sufficient to justify a court in vacating a verdict and granting a new trial, for the reason Annie Durham testified fully at the trial; Len Taylor evaded the process of the court to avoid testifying in behalf of the accused, and does not state in his affidavit that he will not do the same thing again; and Mullins is presumed to be in California and does not offer to testify. If they should all appear and testify to the matters they state are within their knowledge, the evidence given would be cumulative, contradictory, or impeaching in character, and it is not at all certain or probable that a different result would follow.

The appellant contends that the venue was not proven. This contention is without merit. The appellant in his statement and testimony is very careful to show that the place where the only transaction between the accused and prose-

cutrix took place was within one-half mile of the Harvey House in the town of Winslow. Winslow is in Navajo county. Appellant is well acquainted in that vicinity from his long period of residence there. The girl was a stranger, had lived at Winslow about three weeks, and would not be as well informed of locality on a dark night as the accused would be. That a great distance was traveled after leaving the dance hall to the place of the crime, and from that place on the return to the Harvey House, as the prosecutrix testified, is not significant of any great distance from the place of the crime to the Harvey House. The distance traveled at night in a level country is no indication of the distance between the starting and stopping points. The evidence is ample from which to reasonably draw the inference that the crime was committed in Navajo county as alleged. The matter could have been readily established by the simple means of a few questions. It is an inexcusable neglect for the prosecution to omit direct proof of the venue in the trial of every criminal case, and trust to the uncertainty of the proof of facts from which the venue may be inferred; yet sometimes this occurs, and this is one of the times of its occurrence. The proof is in this record, and sustains the conviction.

The instructions complained of wrought no prejudice to the appellant's rights.

Upon the whole case, no reversible error in the pleadings or proceedings has been committed, and the accused has been awarded a fair and impartial trial. Consequently, I am of the opinion the judgment must be affirmed.

Affirmed.

FRANKLIN, C. J., and ROSS, J., concur.

---

For authorities discussing the question of cumulative evidence as grounds for new trial in criminal cases, see note in 46 L. R. A. (N. S.) 903.